##### IN THE

# HIGH COURT OF ERRORS AND APPEALS

##### FOR THE

## STATE OF MISSISSIPPI.

---

## OCTOBER TERM, 1852.

### GEORGE W. SHIELDS *vs.* TAYLOR & TARPLEY.

25 13
f76 783

The instrument sued on is not a security for the absolute or unconditional payment of money, but is a contract by which money is stipulated to be paid. *Held,* that it is assignable.

T. & T. were not bound in law to know who held the order or contract upon which suit was brought, until they had actual or constructive notice given them of the fact.

No man is bound to remain a debtor, for he may pay to him with whom he has contracted to pay, unless otherwise notified.

If he pay before notice that his debt has been assigned, the law holds him exonerated.

Any act which the law would compel a person to do, he may do voluntarily, and the law protects him in the act.

Had T. & T. refused payment to T. & Co., when they applied for the money, a motion could have been sustained against them for the amount.

IN error from the circuit court of Hinds county; Hon. P. W. Tompkins, judge.

Taylor and Tarpley, the defendants, were practising attorneys, and partners as such, the former residing in Vicksburg,

and the latter in Hinds county, Mississippi.   They had for
collection a demand on James M. Towns & Co., in favor of
George W. Tyson & Co., on which they had instituted suit in
the United States Circuit Court.   Taylor made a trip to New
York, the place of residence of George W. Tyson & Co., and
while there a draft was drawn in the following words: —

" Messrs. TAYLOR & TARPLEY, Gent.

" Please pay to the order of G. W. Tyson & Co., one thou-
sand dollars, when collected from the paper in your hands of
J. M. Towns & Co., and much oblige,        Yours, &c.

DAVID J. TYSON,

New York, August 29, 1838.        p. G. W. TYSON & Co."

The order was accepted by Taylor, by writing the name of
the firm on its face on the day of the date of the order, or
shortly thereafter.   " At the time of the acceptance of this and
other drafts, which was accepted by Taylor, Tyson told him
(Taylor) that the object of procuring the acceptance was, to
transfer the acceptance to other parties."   " But deponent does
not know that he was told that this draft was to be transferred
to Shields, the plaintiff.   The firm of G. W. Tyson & Co.
had, at the time of the foregoing acceptance, and others by
Taylor & Tarpley, a considerable amount of assets in the
hands of said Taylor & Tarpley, for collection, which they
were apprehensive might be attached or garnisheed by their
creditors, and that to cover them from such a result, the drafts
were drawn in the name of David J. Tyson, by George W.
Tyson, in favor of G. W. Tyson & Co., for the purpose of
rendering all the members of that firm liable, as indorsers of
said drafts."   Reynolds' Deposition, 32.

On 22d May, 1839, the marshal paid to Tarpley $3,000,
exclusive of his commissions, which sum was paid over to G. W.
Tyson on the next day.   Neither Taylor nor Tarpley had notice
that the draft was assigned to Shields, nor does it appear that
Tyson & Co. had assigned it to Shields when the money was
paid over, except by the recital in a letter from Shields to
Taylor & Tarpley, written after the payment to Tyson, in
which he says, he received the draft the preceding August, the

letter being dated June 10th, 1839. See Falconer's Depo. 35. This letter was introduced only in corroboration of the idea that Taylor & Tarpley had no notice.

The plaintiff moved the court to instruct the jury, " If they believe, from the evidence, that Taylor, of the firm of Taylor & Tarpley, accepted the draft at the request of G. W. Tyson & Co., with knowledge that the draft was procured by G. W. Tyson & Co., for the purpose of being assigned to some one of their creditors, and for no other purpose whatever, and that Taylor knew that purpose, and gave the acceptance for that purpose, and that said draft thereafter, and before payment of the money by Taylor & Tarpley to G. W. Tyson, was assigned to the plaintiff in accordance with such purpose, the defendants are not entitled to the benefit of the subsequent payment as a defence to this action." Instruction refused, and plaintiff excepted.

Defendants moved the court to instruct the jury, that " If they believe, from the evidence, that the fund out of which the instrument sued on was to be paid, was paid over by the defendants, or either of them, to the firm of G. W. Tyson & Co., or any member of it, before notice of the transfer of the instrument was given to the defendants, or either of them, then they must find for the defendants." Instruction given, and plaintiff excepted. Judgment was rendered for the defendants.

Plaintiff moved for a new trial, which was refused, when he prayed a writ of error.

*D. Shelton*, for plaintiff in error.

First. The instrument sued on is a writing for the payment of money, and the payee could have sued Taylor & Tarpley, the acceptors of the same, and have recovered the amount. If I were dependent upon judicial decisions for the truth of this position, the decision is directly made on the point. *Van Vacter v. Brewster*, 1 S. & M. 400.

But I am not dependent upon decisions; the proposition is law by express statute. Hutch. Code, 639, § 3.

Second. Such a writing for the payment of money may be assigned by indorsement, and the indorsee may maintain any

action which the payee could have maintained previous to the indorsement. Our statute not only gives the negotiable quality to bills, notes, &c., but "to any writing for the payment of money." Hutch. Code, 640, § 9.

Under this statute it has been repeatedly held, that various writings that according to the law merchant were neither bills nor promissory notes were nevertheless negotiable, and that the indorsee could maintain the action. 9 S. & M. 462, and authorities cited.

But it may be insisted, that they are entitled to protection because of the payment made to Tyson in May, 1839.

In replying to this position, I regard Tarpley as being precisely in the same position as Taylor is, because, if I fix upon Taylor notice, or that which is in law equal in effect to notice, Tarpley, his partner, is equally affected thereby, and equally liable to plaintiff. 20 John. R. 178; 1 Maule & Sel. 259; Gow on Part. 90; 4 S. & M. 739.

Is not Taylor liable? He made the acceptance under an express agreement that Tyson & Co. were to indorse it to some one of their creditors; he not only accepted this, but other similar bills for that purpose, and for that purpose only. The purpose of transfer was, therefore, the sole object with which Taylor gave those acceptances, the sole purpose of Taylor & Tarpley in accepting them; it was the express agreement between Tyson & Co. and Taylor; but notwithstanding this agreement, and notwithstanding Tyson & Co., according to said agreement, did in fact transfer the acceptance, yet Taylor afterwards paid the fund, on which the acceptance had been made, to Tyson, and on that payment seeks to avoid the acceptance. If this were done by design, it was neither more nor less than a fraud. If the payment was inadvertently made, it was that degree of carelessness which was equivalent to a fraud. Taylor & Tarpley should have required the surrender of their acceptances before they paid the fund to Tyson & Co. Paying with knowledge of the outstanding acceptance, Taylor & Tarpley paid in their own wrong; they created the loss to themselves or to the plaintiff; and it is a universal rule, that where one of two parties has to bear a loss, he shall bear it whose negligence or

fraud has produced the loss, and he shall be protected who has been guilty of no negligence or fraud. 4 How. R. 160, 161; Story's Eq. 202–204.

*W. C. Smedes,* on the same side.

*D. Mayes,* for defendants in error.

In this case the question is *res judicata,* as will appear by reference to the pleadings and record in the United States Circuit Court.

The provision, that all writings for the payment of money shall be assignable by indorsement, only embraces writings for the absolute and unconditional payment of money. This is not such a writing. It is an acceptance to pay conditionally, namely, if the money should be collected from James M. Towns & Co. This question, clear on principle, is well settled by adjudged cases.

The Kentucky statute, (1 Laws of Ky. 50,) is in its terms as comprehensive, indeed more comprehensive, than the Mississippi statute.

For its construction, see *Force's Adm.* v. *Thomason,* 2 Littell, 167; *Bowman* v. *Frowman,* 2 Bibb, 233; *Craig* v. *Miller,* 3 Ib. 441; *Boyd* v. *Rumsey,* 5 J. J. Marsh. 42; *Halbert* v. *Deering,* 4 Littell, 9; *Henry* v. *Hughes,* 1 J. J. Marsh. 454.

These show that the paper assigned must be simply for the payment of money. An acceptance to pay when collected is not such a paper, for if not collected, there is to be no payment. It is but a conditional obligation.

Payment before notice is a good defence. *Chiles* v. *Corn,* 3 Mar. 231; *Schooling* v. *McGee,* 1 Mon. 233; *Porter* v. *Breckenridge,* Hard. 21; *Markham* v. *Todd,* 2 J. J. Marsh. 366.

The fact that Taylor was told that Tyson & Co. intended to assign, was no more notice, or a fact to put Taylor & Tarpley on inquiry, than would be the fact, that negotiable paper had been given. In either case, the paper not being produced when payment is asked, might put payee on inquiry. It has never been held that there was constructive notice of assignment. If I see a man in possession, or if I purchase under circumstances which should put me on inquiry, there is constructive notice.

2 *

*Caveat emptor.* If I owe a debt, I may pay to him with whom I contracted, unless he who has acquired it give me notice. The law does not require that I withhold payment and remain a debtor. If we are put on inquiry, of whom, and where shall we inquire? We know nothing of Shields. The only man supposed to know any thing of the transfer is Tyson, who applied for and received payment, defrauding somebody by doing so. If Shields was an assignee for value, and that fraud he effected by reason of Shields's negligence, who shall lose? The law does not favor the negligent, and throw the loss on the punctual and diligent attorney, because he was prompt. And all that can be objected to Taylor & Tarpley, is, that they paid as bound to do, and did not hold back the money, and go out into all the world to inquire whether some one did not hold a draft.

Mr. Chief Justice SMITH delivered the opinion of the court.

There are two questions presented by the record in this case. The first is, whether the order on which the suit was brought was assignable by indorsement, so as to authorize the plaintiff in error, who declared as assignee, to maintain the action in his own name. The second is, whether the defendants in error were not discharged by the payment to Geo. W. Tyson, made under the circumstances detailed in the evidence, from their liability.

As to the negotiability of the draft or order. It was drawn by David J. Tyson in favor of G. W. Tyson & Co. on the defendants, and contained a request that the defendants, would pay to the order of the said Geo. W. Tyson & Co. "one thousand dollars when collected on paper in their hands, of J. M. Towns & Co." The defendants accepted generally; and it was afterwards indorsed to plaintiff in error.

It is not pretended that this paper was a bill of exchange; or that it was assignable or negotiable at common law. But it is insisted, that the statute of the 5th of June, 1822, made it a negotiable instrument; and hence its transfer by indorsement to the plaintiff, gave him a right to sue upon it in his own name.

The statute referred to is very broad and comprehensive in its terms. " All writings for the payment of money or any other things" are made assignable by indorsement; and the assignee or indorsee of such a writing is authorized to sue in his own name, and maintain any action which the obligee or payee could have maintained thereon previous to assignment. Hutch. Code, 640, p. 9, a.

The instrument under consideration is not a security for the absolute or unconditional payment of money. But it is not the less a writing or contract, by which money is stipulated to be paid. It is manifestly, therefore, within the letter of the statute.

But it is contended, that it was not intended by the legislature, by the adoption of this statute, to give to conditional contracts for the payment of money, the quality of negotiability; but to make only such securities, which import an unconditional engagement to pay money, and which were not previously negotiable at common law, assignable by indorsement.

We do not concur in this construction of the statute. One of the objects of the legislature, in making the several classes of written instruments enumerated assignable, so as to vest in the assignee the legal title of the assignor, was to facilitate commercial exchanges. Those securities were thus made to answer to some extent the purposes of a circulating medium. It cannot be doubted, that this object would be promoted by holding that writings for a conditional as well as an unconditional payment of money, are transferable under the statute. It is no sufficient reason for excluding them from the operation of the act, that they are less available as a means of facilitating exchanges than contracts of the latter description.

Nor do we concur with counsel in the position, that this view of the subject is in .conflict with the interpretation placed upon similar statutes in the States of Virginia and Kentucky.

In the State of Virginia it has been held, that a bond conditioned for the payment of money or certificates, was not assignable under the statute of 1748, by which bonds conditioned for the payment of money or tobacco were made assignable. *Craig* v. *Craig*, 1 Call, R. 419; *Henderson* v. *Hepburn*, 2 Ib.

232; 6 Cranch, 82. But no case has been found in which it was holden, that a conditional obligation to pay in either money or tobacco was not assignable under that statute.

In Kentucky, the precise question before us, as far as we are informed, has never been decided by the courts. The authorities cited are cases in which it was holden, under a statute very similar to our own, that contracts or obligations containing stipulations for the performance of any act or duty which was not the payment of money or property, were not assignable. *Force's Adm.* v. *Thomason,* 2 Litt. R. 167; *Halbert* v. *Deering,* 4 Ib. 9; 2 Bibb, 233; *Craig* v. *Miller,* 3 Ib. 441; 1 J. J. Marshall, 454; 5 Ib. 42.

Holding that the plaintiff was entitled to sue in his own name as the assignee of the instrument declared on, we will proceed to the consideration of the second question.

The defendants in error were partners in the practice of the law, and were resident in this State. They had in their hands for collection a claim belonging to Geo. W. Tyson & Co., of New York, against J. M. Towns & Co., upon which they had instituted suit in the Circuit Court of the United States. In 1838, Taylor, one of the defendants, being then in the city of New York, accepted the order above described, in the name of the firm. The order was accepted some time in August of that year. Taylor was informed by Tyson at the time he gave the acceptance, that his object in procuring his acceptance, was to transfer it to other parties. Tyson did not state to whom he designed to transfer the acceptance.

The firm of Geo. W. Tyson & Co. had, at the time of the date of said acceptance, when other acceptances were also given, large assets in the hands of the defendants for collection. Tyson & Co. were apprehensive that they would be attached or garnisheed in the hands of the defendants, and to prevent such a result the orders were drawn in the manner above described. Tarpley was informed by Taylor that he had given the said acceptance.

On the 22d May, 1839, Tarpley received upon the claim against J. M. Towns & Co. $3,000, which on the day following was paid over to Geo. W. Tyson. No notice whatever had

been given to either Taylor or Tarpley that the order had been assigned to the plaintiff in error before the payment made to Geo. W. Tyson. The first notice of the transfer was conveyed by a letter written at New York, dated on the 10th of June, 1839, transmitted by mail, and in which defendants were informed that their acceptance had been assigned to plaintiff on the 29th of August, 1838. The only evidence of the actual date of the transfer of the acceptance to plaintiff in error, is the recital of that fact contained in his letter of the 10th of June, 1839.

From this statement of the facts established by the evidence, it is manifest that the defendants had no direct or express notice of the assignment before payment. But it is assumed, that the defendants had constructive notice, at least that the facts above detailed were sufficient to have put them upon inquiry, and hence that the payment made to Tyson & Co. was in violation of the rights of the assignee, and did not discharge them from their obligation as acceptors of the order.

There is no pretence for questioning the *bona fides* of the payment. And, were it admitted that the doctrine in regard to constructive notice is strictly applicable to the question under consideration, we do not think, that the facts sustain the assumption.

Taylor, when he gave his acceptances, was informed by Tyson that he intended to assign them to third parties. This was certainly not notice, either actual or constructive, that the order before us had been assigned. Nor can it be said with greater reason, that the statement of Tyson that he intended to transfer the acceptance, was a fact which should have put the defendants on inquiry. If it were their duty to make the inquiry, whether the order had been assigned or not; of whom should they have sought the information? They were certainly not bound to select the plaintiff for that purpose out of the fifty thousand individuals who compose the mercantile community of the city of New York. If defendants had delivered a negotiable note to Geo. W. Tyson & Co. instead of accepting the order, and nothing was said about its transfer, the cases would not have been materially different. In neither instance would a pre-

sumption of law or of fact exist, that a transfer had been or would be made.    In either case, if payment were demanded by Tyson & Co. and the note or acceptance not produced, that would be a circumstance which should put them on inquiry. But of whom should the inquiry be made?    Most certainly, the debtor in such case would not be required to go further than the original holder.    No man is bound to remain a debtor; he may pay to him with whom he contracted to pay; and if he pay before notice that his debt has been assigned, the law holds him exonerated; for the reason, that it is the duty of the person who has acquired a title by transfer, to demand payment of the debt, to give his debtor notice.

Any act which a person may be compelled to perform by a proceeding at law, may be done voluntarily, and he will be protected by the law.

If the defendants had refused payment to Tyson & Co. when they applied for the money, and a motion had been entered against them on such refusal, could they, upon the facts, successfully have defended it?    We do not doubt that they could not.    Hence they were justified in making payment, and were consequently released from their liability on the acceptance.

Judgment affirmed.

YERGER, Judge, having once acted as counsel in this case, took no part in its decision.