FIRST NATIONAL BANK OF NASHVILLE *v.* DEAN ET AL.

[70 South. 245.]

BILLS AND NOTES. *Assignment. Notice.*
   Where the maker gave his note to a bank of which he was a director and the bank assigned the note to a third party and the director when making a payment upon the note to the cashier was told that it was not in the bank, he could not claim that he made the payment to his bank without notice of the assignment, since being put upon inquiry and able to ascertain the true facts he was chargeable with notice that his note had been assigned.

APPEAL from the chancery court of Bolivar county. HON. M. E. DENTON, Chancellor.

Suit by First National Bank of Nashville against L. G. Dean and another. From a judgment for defendants, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*J. B. Harris,* for appellant.

Any reasonable man must know that Mr. Dean a director in this Bank, knew from Mr. Meadow or from some other source, why his note for this large sum was out of the custody of his own Bank. Mr. Dean's defense is that he made the payment without notice of the assignment, and the burden of proof was on him to show this, and while he says that he did not know where the note was at the time he made the payment, he nowhere testifies that he did not know (and it is but natural that an officer of the Bank would know) that the note had been assigned.

If the court should hold that it is bound by the chancellor's finding that Mr. Dean was not told that the note had been hypothecated, by the Bank, and that he had not actual knowledge of any assignment of his note, the chancellor nevertheless was in error as to the law, in not holding that Mr. Dean had constructive notice under his own testimony and the conceded facts in the case. Mr. Dean himself testified that at the time he paid by checks the four thousand, four hundred eighty-six dollars and fifty-seven cents, that Mr. Meadow told him that the note was not in the Bank, but that he would get it in a few days. Certainly, as an officer of the Bank, he knew the note belonged in the Bank, unless it had been assigned to some other party. In fact, everybody knows that under ordinary conditions, banks hold custody of their own securities.

When asked upon cross examination if he did not understand from what Mr. Meadow said that the note had been hypothecated he said "I can't say that it was, he told me the note was not in the Bank." And in reply to the question, "When he made that remark, you naturally understood that the note had been hypothecated?" he said: "Well, I can't say that did," and when further pressed by the question, "You say that you did not take that view of it?' he testified, "I don't remember now—as I said awhile ago, that if the note was out of the Bank,

it was in somebody else's hands." But nowhere does he say that he thought that the Bank held the title to the note. Under the circumstances of the case, and in view of Mr. Dean's official position in the Bank, certainly he had enough information to put him on inquiry, and especially so when he had but to look, or ask, to inform himself.

As to the character of notice, the principle seems to be pretty well established by authority that whatever is enough to excite attention or put the party on inquiry is notice of everything to which the inquiry might lead, sufficient information to lead to a fact, shall be deemed sufficient to charge a party with knowledge of it. *Parker* v. *Foy,* 43 Miss. 260.

From the moment that he had such information, as would put a man of ordinary prudence and care on investigation—information not derived from vague and loose rumor, but from persons connected with the transaction—he is chargeable with knowledge of the truth to which he could have attained. *Parker* v. *Foy, supra.*

A slight investigation would have conducted him to a knowledge of the true state of the title; consequently, he must be charged with knowledge thereof, for whatever is enough to excite attention or put a party on inquiry, is notice of everything to which such attention or inquiry might reasonably be led. *Baldwin* v. *Anderson,* 103 Miss. 462.

We therefore, respectfully submit that there should have been a decree against Mr. Dean for the face of the note with ten per cent. interest to date and ten per cent. attorney's fee as provided for in the note, and we ask that this decree be rendered here.

*D. J. Allen, Jr.,* for appellees.

The only notice imputed to Mr. Dean, then was that his note was not in the bank (The First State Bank of Shaw), when he made the payment at and to that bank. There was no notice that the note had been assigned or hypothe-

cated. And, as long ago as 1844, in the case of *Allein* v. *Agricultural Bank*, 3 Sm. & M. 48, it was held that the mere non-production of a note at the time of its payment is not, in itself, notice that the note has been assigned, or sufficient to put the maker upon inquiry. In the case cited, the supreme court said (page 57):

"The appellants rely upon the statute regulating the assignment of promissory notes, etc. (How. & Hutch. S. 12), as affording them the benefit in this action of the liquidation of the note by the maker, with Fauver & Farnsworth. This payment was complete, although the note was not surrendered up at that time. A demand of payment, without a presentation of the note, is an insufficient demand; but payment of a note, without its delivery, but also in the absence of notice to the maker of its assignment is good and is protected by the very operation of this statute. It does not appear that the note had been assigned at the time of the arrangements with Fauver & Farnsworth. The fact of its non-delivery at that time might possibly raise such a presumption; but, in a defense of the kind under consideration, the proof of notice to the maker of the assignment, is a matter requiring a higher degree of evidence than that of presumption."

The presumption in the case cited was stronger than the presumption which would arise in the case now before the court from the mere non-production of the note, because in the cited case the makers had paid the note in full and had required an indemnifying bond at the hands of the payee, to guarantee the future delivery of the note and to protect them against loss should the note afterwards be put in action by a third party. In the instant case, the maker had no right to expect the note to be delivered to him, as he was not making payment in full, so that there could be no reasonable presumption to arise from its non-delivery to him at the time.

In the case of *Shields* v. *Taylor & Tarpley*, 25 Miss. 13, the notice of the assignment of a bill of exchange was much stronger than the notice proven in the case at bar.

Counsel for appellant, in his brief, seems to lay some stress upon the fact that Mr. L. G. Dean was a director in the First State Bank of Shaw. This fact would but furnish Mr. Meadow with additional reason to conceal from Mr. Dean the fact that his note had been hypothecated, when Mr. Meadow meant to retain in his own possession the large sum of money which Mr. Dean was paying in on his five thousand dollar note. Had Mr. Dean, as a director of the First State Bank, been in fact informed that his five thousand dollar note had been assigned, he would either have insisted upon paying the note to the holder or would have been careful to see that the payment was remitted to the holder of his note. There is not shown any record to have been kept of the papers which were deposited with the First National Bank as collateral securities, and from no books or records kept by the bank, does it appear that Mr. Dean could have possessed himself of information as to the hypothecation of either of his notes. Knowledge gained by Mr. Dean that his five thousand dollar note had been hypothecated and yet that the payment made by him on his note was retained in the possession of the First State Bank would certainly have led to an investigation, resulting in a disclosure of the true condition of the bank. Meadow was determined to postpone the evil day of final failure just as long as could be done by devious methods, and this fixed determination on his part was sufficient to lead him to conceal from the directors, stockholders and depositors the true *status* of affairs. Aside from these considerations, a complete answer to the theory that Mr. Dean, as a director of the First State Bank, may be charged with constructive notice of the hypothecation of his note, may be found in the fact that the bill of complaint does not proceed, and the case was not tried before the chancellor, upon any such theory. The bill of complaint does not even allege that Mr. Dean was a director of the First State Bank of Shaw; it does not intimate that, because of his directorship in that institution, he may be held to be chargeable with constructive

notice of the assignment or hypothecation of his note; the relief sought is not asked because of Mr. Dean's connection with the bank or his constructive knowledge of the details of its business affairs. But, on the other hand, the bill expressly charges that Mr. Dean had actual notice from J. K. Meadow, the cashier of the First State Bank, that his note had been assigned at the time he made the payment thereon. And it was upon the question of actual notice *vel non* on the part of Mr. Dean that the case was submitted to the chancellor; the idea that Mr. Dean could be held chargeable with constructive notice of the hypothecation of his note simply because of his directorship in the bank, was not broached in the argument of the case before the chancellor, and we submit that the case having been tried and decided upon one theory in the lower court cannot here be tried upon a totally different theory. This court, in reviewing this case upon appeal, will hold the complainant, appellant here, to its theory of the case as presented by its bill of complaint and upon which the case was tried and argued before the chancellor, and will not permit appellant to advance a totally different theory here from that upon which the case proceeded in the lower court. *I. C. R. R. Co.* v. *Handy,* 66 So. 783; *Railroad Company* v. *Schraag,* 84 Miss. 154; *Railroad Company* v. *Sumrall,* 96 Miss. 867.

Stevens, J., delivered the opinion of the court.

This is a suit in equity by appellant as complainant in the court below, pledgee of a certain promissory note executed by appellee, L. G. Dean, in favor of the First State Bank of Shaw, of which W. G. Hardee, appellee, was appointed receiver. In May, 1911, Mr. Dean executed and delivered to the First State Bank of Shaw his two promissory notes, one for five thousand dollars and the other for four thousand dollars, both payable on demand to the order of the First State Bank of Shaw, both bearing interest from date and providing for at-

torney's fees.  In August, 1911, the First State Bank
of Shaw negotiated a loan from the First National
Bank of Nashville, Tenn., appellant herein, for ten
thousand dollars, and to secure the payment thereof,.
hypothecated with appellant certain notes as collateral.
security, among them the five thousand dollar demand
note executed by Mr. Dean as aforesaid.  This ten thou-
sand dollar note held by appellant was afterwards re-
duced to seven thousand, five hundred dollars and re--
newed December 1, 1911, in the sum of seven thousand,.
five hundred dollars, payable on demand and secured by
proper assignment, by the five thousand dollar demand
note of Mr. Dean, along with other collateral.  The four
thousand dollar demand note of Mr. Dean's was hypothe--
cated by the First State Bank of Shaw to secure a loan
obtained from the Bank of Leland; and, after the ap--
pointment of Mr. Hardee as receiver, this four thousand
dollar note was redeemed and held by the receiver as.
an asset of the Bank of Shaw at the time this suit was.
instituted in the court below.  In October, 1911, and
after both notes of Mr. Dean had been assigned by the
First State Bank of Shaw as stated, Dean, as maker of
the notes, went to the banking establishment of the First.
State Bank of Shaw and paid the cashier four thousand,.
four hundred and and eighty-six dollars and fifty-seven
cents, with the request that the payment be applied
to his notes, and not to an overdraft the bank then
held against him.  On cross-examination, Mr. Dean him-
self says:

"I had an open overdraft, and I did not want this to·
go on the cotton overdraft, and I asked him to apply it
on the notes—one or the other of the notes.  I did not
say which one of the notes, because it was natural to·
suppose that the four thousand, four hundred would
apply on the larger note; and I noticed on the margin
of the notebook that he applied it on the larger note."

When Mr. Dean tendered his payment, the cashier
informed him that his notes were not in the bank; and,.

waiving certain conflicts between the testimony of the
cashier and Mr. Dean, it appears undisputed that Mr.
Dean thereupon insisted upon the payment being ap-
plied to his notes, and that in his presence the cashier
took the bills receivable or note register and noted this
payment in writing opposite the place where the five
thousand dollar note appeared of record. Mr. Dean was,
at that time, a director of the First State Bank of Shaw,
but denied actual knowledge or notice of the assign-
ment of his five thousand dollar note to appellant. His
testimony in reference to notice of the assignment is,
to some extent, indefinite and unsatisfactory.  When
asked if the cashier told him his note had been hypothe-
cated, he says:

"No sir; never at any time did he tell me. I did not
ask him."

And being asked if that was not his understanding, he
says:

"I can't say that it was. He said the note was not in
the bank. . . . I could not say just what view I did
take of it, as I said awhile ago that if the note was out of
the bank, it was in somebody else's hands."

Subsequent to this transaction, the receiver was appoint-
ed for the First State Bank of Shaw, then insolvent; and
the receiver qualified and was administering, under the
supervision of the chancery court, the estate of said
bank. It appears that appellant did not propound its
claim as a secured creditor in the insolvency  proceed-
ings, but proceeded to the collection of its collaterals, and
to that end exhibited its bill in chancery to recover upon
the five thousand dollar note in question.

The receiver and Mr. Dean both contend that the
money paid by Mr. Dean to the cashier constituted a
valid payment on the note here sued on. Appellant con-
tends that the First State Bank of Shaw had no authority
to receive and apply this payment, and that Mr. Dean
had both actual and constructive notice of this. Mr.
Dean in his answer, as well as briefs of his solicitors,

offers to pay the balance due on the five thousand dollar note in question as well as the four thousand dollar note. It is the further contention of appellant that the further payments due by Mr. Dean should be applied first to the liquidation of the entire principal, interest, and attorney's fees claimed by appellant on the five thousand dollar note, with the right on the part of Mr. Dean to insist upon the money paid to the cashier of the First State Bank of Shaw being applied to the four thousand dollar note. It is conceded by all parties that it is immaterial to the rights of Mr. Dean whether the payment in question is applied to the note of appellant or to the note now held by the receiver. The chancellor treated the payment as applying on the note here sued on, and limited appellant to recovery of the balance of the principal and interest and the attorney's fees due only upon this balance. We think the evidence sufficiently shows that Mr. Dean had notice of the assignment of the note here sued on. He asked that his payment be applied to his notes, one or the other. He was told by the cashier that neither of his notes was in the bank at the time he made the payment; and by this information he admits that he knew the note here sued on was in some one else's hands. If the note was in the hands of parties other than the bank, he knew it had been either pledged or sold outright. One question propounded by him to the cashier would have disclosed appellant as pledgee. But, waiving any duty to inquire from the cashier, Mr. Dean was at that very moment standing in the midst of the bank's records—in arm's reach of the very records that are bound to have reflected the loan from and pledge to appellant. As a director of the institution, he had access to all of the records of the First State Bank of Shaw, and as one of its agents had the absolute right to demand from the cashier or other employees of his own bank just what disposition had been made of his notes. Instead of one word of inquiry, he deliberately closed his eyes to information at his immediate command, and

should not, and cannot, now be heard to say that he has made the payment in question, innocently and without notice of the assignment to appellant. Notice of assignment, to be availing and effectual, need not come direct from the assignee or holder of the paper. It is sufficient that the maker has notice from any source.

"Such notice usually comes from such source, but the law does not require it. If the maker has notice, in other words, if he knows that the note has been transferred, it is immaterial how, or from whom, he acquired such information, as thereafter he is precluded from acquiring as against the assignee, any set-off. This is expressly ruled in *Jones* v. *Witter,* 13 Mass. 304, and in *Small* v. *Browder,* 11 B. Mon. (Ky.) 212. In this last case, information that the note had been assigned was held sufficient, though the defendant was not informed that the note had been assigned to the plaintiff. In neither of these cases had notice been given by the assignees, and in both of them set-offs were excluded, because information that the notes sued upon had been assigned was imparted by others." *Johnson* v. *Amana Lodge, No. 82, Independent Order of Odd Fellows,* 92 Ind. 150.

The information imparted to Mr. Dean by the cashier, his position of cashier, the circumstances surrounding him, the fact that he was dealing, not with a private individual, but with a banking institution, and stood in the midst of the very information at his command, all conspire to charge him with notice of appellant's rights in the premises, and place him in an attitude of declining to know the very thing about which he says he was ignorant.

"Where, however, the circumstances show that the purchaser of paper refrained from making inquiry lest he should thereby become acquainted with the transaction out of which the note originated, he cannot occupy the attitude of a holder in good faith without notice." *Schmueckle* v. *Waters,* 125 Ind. 265, 25 N. E. 281.

"No man should be permitted to willfully close his eyes and then excuse himself upon the ground that he did not see." *State Nat. Bank of Springfield* v. *Bennett*, 8 Ind. App. 679, 36 N. E. 551.

This case is differentiated from that of *Allein* v. *Agricultural Bank*, 3 Smedes & M. 48, relied on by counsel for appellee. In the latter case an accommodation note, in form negotiable, was executed by Thos. Allein, in favor of Jas. Wood, and by Wood indorsed to James Payne and by Payne to Fauver & Farnsworth. It was dated April 9, 1836, due four years after its date. In January, 1838, long before its maturity and before assignment, complete satisfaction was made; and Fauver & Farnsworth, not having the note in their possession at the time, executed an indemnity bond conditioned to deliver up the note. The opinion states:

"It does not appear that the note had been assigned at the time of the arrangement with Fauver & Farnsworth."

The facts of that case further show that not one word was uttered by the holders of the note indicating claim of ownership by other parties; and there were no such circumstances as surround Mr. Dean in the instant case.

Appellant, in our judgment, is entitled to recover the full amount of principal, interest, and attorney's fees, on the five thousand dollar note sued on. The decree of the court below must therefore be reversed and set aside, and the cause remanded, for further proceedings in accordance with the views herein expressed, and without prejudice to the right of Mr. Dean to offset the payment of four thousand, four hundred and eighty-six dollars and fifty-seven cents, against the four thousand dollar note now held by the receiver.

*Reversed and remanded.*

SMITH, C. J. (dissenting). The burden of proving that when appellee Dean paid the First State Bank of

Shaw he had notice that his note had been negotiated was upon appellant (4 Cyc. 110); and this burden, under the ruling in the cases of *Allein* v. *Agricultural Bank*, 3 Smedes & M. 48, and *Shields* v. *Taylor*, 25 Miss. 13, was not met. I am of the opinion, therefore, that the decree of the court below should not be reversed upon the ground relied upon by my associates.